IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 17-22 Erie |
| ) | |
| DANIEL THOMAS SUTTON ) | |

# SENTENCING MEMORANDUM
## OF THE UNITED STATES

Daniel Sutton received and possessed hundreds of videos of child sexual abuse material, some of it depicting young children. He should receive a guideline range sentence. His obvious and depraved sexual interest in young children makes him a danger to the community.

## Factual Background

On January 13, 2017, the Pennsylvania State Police (PSP) identified a computer using a specific IP address which was sharing child sexual abuse material on the BitTorrent network. On January 13, 2017 and January 29-30, 2017, PSP was able to download several files directly from that computer. The downloaded files were reviewed by law enforcement. It was determined that most of the reviewed files contained suspected child sexual abuse material, with three of the files further described as follows:

    a)    **Asian girl with man (Lose Hymen).mpg:** A 22 minute and 57 seconds video depicting a compilation of different prepubescent and juvenile girls and boys performing various sex acts with adult males and

        females. During one scene, an adult woman performs fellatio on a prepubescent boy. (Downloaded on January 13, 2017.)

   b)   **(pthc) A good Syo fuck.avi:** A 2 minute and 43 seconds video depicting an adult male having intercourse with a prepubescent girl who is naked from the waist down. (Downloaded on January 30, 2017.)

   c)   **Toddler Rape Kiddy Daughterincest Diaper Pthc 1Yo 2Yo 3Yo 4Yo 5Yo 6Yo 7Yo 8Yo.avi:** A 2 minute and 44 seconds video depicting an adult male having intercourse with a prepubescent girl who is naked. At the end of the video the adult male ejaculates onto her vaginal and anal area. (Downloaded on January 30, 2017.)

PSP then transferred their investigation to the FBI who was able to trace the involved IP address to an address in Bradford, Pennsylvania where Daniel Sutton lived. On July 26, 2017, the FBI executed a federal search warrant at Sutton's residence in Bradford. The FBI seized Sutton's digital devices that were in the home, including a PNY 32GB flash drive. A forensic examination of that device revealed the presence of 218 videos depicting minors, some as young as infants and toddlers, being sexually abused. Some of the material depicts the sexual penetration of young children in a manner that would obviously inflict pain upon the child.

During the search, Sutton was interviewed by the FBI. He readily admitted to downloading and viewing child sexual abuse material. Sutton revealed that he used UTorrent to search for and download the material. He

also admitted that he was fully aware that he was distributing the material while he was on-line using UTorrent but claimed that he would move the files to a thumb drive to avoid detection by his girlfriend. Sutton revealed that it was "safer" for him not to have the illegal files on his computer.

Sutton revealed that he had most recently downloaded and viewed child sexual abuse material about a month prior to the FBI's arrival at his residence. He disclosed his use of the following search terms to locate the material: "pthc", "forced rape", and "10yo". He also disclosed that he searched for the worst stuff and would seek out videos with sound.

## Argument

### A. Legal Context

Numerous courts have emphatically expressed the wretched consequences of child sexual abuse material. In *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child [sexual abuse material.] These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage.

The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child sexual abuse material by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was

not persuaded, reasoning:

> Congress found that "where children are used in its production, child [sexual abuse material] permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child [sexual abuse material], because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation of and distribution of child [sexual abuse material] and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id.* (citations omitted); *See United States v. Gonzalez*, 445 F.3d 815 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

The district court in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *aff'd* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child sexual abuse material defendant. In denying the defendant's challenge to the legitimacy of the child sexual abuse material guideline, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child [sexual abuse material], we are living in a country that is losing its soul.
>
> Child [sexual abuse material] is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease.

> However, once it enters the legal system, child [sexual abuse material] undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

### B. Sentencing Protocol

It is well settled that district courts "must perform three steps in determining the appropriate sentence to impose on a defendant." *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008). First, "a district court must begin the process by correctly calculating the applicable Guidelines range." *Id. (*citing *United States v. Gall*, 128 S.Ct. 586, 596 (2007); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)). Second, the court must "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id. (*citing *Gunter*, 462 F.3d at 237). Third, "after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose." *Wise*, 515 F.3d at 216-17 (citations omitted). Having set forth the well-established sentencing protocol, the United States will take each step in turn.

### C. Applicable Guideline Range

Both parties agree that the Sentencing Guidelines range applicable to Sutton is 151 to 188 months of incarceration to be followed by a term of supervised release

of not less than five years to life.

### D. Departures

The United States is not seeking an upward departure. A sentence within the 151-to-188-month guideline range is justified, reasonable, and appropriate in this case. Sutton is not expected to seek a downward departure based on any specific provision of the Sentencing Guidelines. Rather, Sutton is expected to seek a downward variance.

### E. Section 3553 Factors

When sentencing a defendant, the Court's reasoning must be guided by all the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background or the impact of the sentence on the defendant. *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). In pertinent part, these factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...
(5) any pertinent policy statement-
(A) issued by the Sentencing Commission ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all the factors, which include the guidelines, the defendant's criminal conduct and its impact upon the victims and not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate way to apply the § 3553 factors to this case. A full consideration of the § 3553 factors calls for a sentence within the 188 to 235 month guideline range.

### 1. Nature and Circumstances of the Offense

Sutton was in possession of 218 videos of child sexual abuse material, which he obtained from the Internet using his computer. His horrid collection was not merely seventeen-year-olds modeling naked. No, his stash of depravity was rife with young children, toddlers, and infants, being raped and abused. These images and movies are so repulsive that only someone with a profound interest in them would hold them close and continue obtaining them.

When interviewed Sutton admitted his use of the following search terms to locate the material: "pthc", "forced rape", and "10yo". He also disclosed that he searched for the worst stuff and would seek out videos with sound.

### 2. History and Characteristics of the Defendant

Sutton grew up in a home free from abuse where he was cared for and his needs were met. (PSIR ¶ 44). He has reported no medical or substance abuse

issues.  (PSIR ¶ 48-49, 54-55).  Sutton is a high school graduate who also obtained an associate degree and took additional college courses at Edinboro University. (PSIR ¶ 56-58).  He also has a fairly consistent employment history.  (PSIR ¶ 59-64).  Sutton has had a far better life than most who have been sentenced in federal court.  There is nothing mitigating in Sutton's background which would justify a downward variance.

> 3. **The Need for Sentence Imposed to Reflect the Seriousness of Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense**

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime, and the defendant is punished justly.  *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010).  The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct.  From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*  The Supreme Court has long recognized that sexual abuse has devastating and long-lasting effects on children. *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Indeed, four members of the Supreme Court deemed child rape to be so serious that death could be imposed as a punishment.  *Kennedy v. Louisiana,* 554 U.S. 407, 447-70 (2008).

Sutton received and possessed child rape movies for months with no sign of quitting when he was caught. A guideline sentence will reflect the gravity of such conduct.

### 4. Impact on the victims

Congress has plainly indicated that "[e]very instance of viewing images of child sexual abuse material represents a ...repetition of their abuse." 18 U.S.C. § 2251, (Historical and Statutory Notes: Child Sexual abuse material Prevention of 2006, Pub.L.No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)). The words of Congress and many courts are echoes of the victims themselves.

Sutton's child sexual abuse material collection included images of twenty-eight (28) known victims, three of whom, the victims in the following series "Jenny," "Vicky," and "Tara", are seeking restitution which Sutton has agreed to pay. It is obvious from Tara's victim impact statement the terrible toll she has suffered. She has great difficulty trusting anyone and is extremely uncomfortable being in public. These effects will likely last a lifetime. In her victim impact statement, Tara wrote the following:

> Every time someone views this trash, they are once again making me re-live the most horrific part of my childhood. I can never truly heal because the perpetrators and stalkers never allow me to do so. Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel safe and have a chance to heal/recover. As a teen, I now realize the extent of people looking at these and I'm concerned about their locations fearing that they will find me. These people need to be punished for taking away a major part of my childhood and sense of security.

Plainly, the negative consequences that Sutton will experience from his conviction pale in comparison to the everlasting and devastating impact on these most innocent victims. The consequences for Sutton were entirely foreseeable and

of his own making. The victims continue to suffer enormously when Sutton and his ilk entertain themselves with pictures of these young victims being raped.

Victims depicted in child sexual abuse material consistently indicate that the continuing dissemination and collection of their abuse imagery is much more disturbing to them than the underlying abuse ever was. Their point is simple. The abuse ended at some point. The viewing and collection of the material memorializing their abuse never ends. Its continued consumption by depraved individuals like Sutton is a constant and unceasing reminder that they can never be fully free of those wishing to receive gratification from their victimization. Thus, the fact that Sutton may not be a hands-on offender is beside the point. He was not charged with hands on offenses and his eager participation in the culture of child devastation has a life-long suffocating and devastating impact on the victims.

5. **The Need for the Sentence Imposed to Afford Adequate Deterrence**

a. **General Deterrence is an Important Factor in Sentencing**

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child sexual abuse material] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to

conclude that it will decrease the production of child sexual abuse material if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff,* 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child sexual abuse material and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.")).

In fact, the Sixth Circuit has reversed a district court that failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012). The district court stated "general deterrence ... will have little [if] anything to do with this particular case." *Id.* The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child sexual abuse material context[.]" *Id.* (citing *United States v. Camiscione,* 591 F.3d 823, 834 (6th Cir. 2010)).

The Court is in a position to send a clear message to the community that those who collect child sexual abuse material will pay a very heavy price. The goal of deterrence is realized if even one person is deterred. A sentence within the applicable guideline range will accomplish this goal.

> **b.    The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

This is the factor involving the incapacitation or specific deterrence of the defendant that the Court is to consider. *See Irey*, 612 F.3d at 1210. The Court should impose a significant guideline range jail sentence and a considerable term of supervised release to ensure that the danger to the community posed by Sutton is minimized as much as possible.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

In *Goff, supra*, the district court sentenced a child sexual abuse material defendant to four months imprisonment despite an applicable guideline range of 37 to 46 months. The Third Circuit vacated the sentence and remanded for resentencing, holding that such a lenient sentence was unreasonable. *Goff*, 501 F.3d at 262. The court opined that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of § 3553 factors. Specifically, the district court did not adequately consider the nature and circumstances of the offense, the need to promote respect for the law, the avoidance of unwarranted sentencing disparities and affording adequate deterrence. *Id.* at 258. Goff downplayed the seriousness of the offense by implying that he committed a victimless crime driven by his curiosity. The Third Circuit emphatically rejected these claims. *Id.* at 258-59.

Goff also argued that he was entitled to a variance because he had never acted out in a sexual way with children. The Third Circuit vehemently disagreed with this argument, reasoning:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's sexual abuse material crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

*Id.* The Third Circuit was also thoroughly unpersuaded that Goff's supposedly exemplary life and charitable activities justified such a low sentence. The sentencing court's reliance on Goff's lack of a criminal history was also criticized because many child sexual abuse material offenders are first time offenders. *Id.* at 260-61. The Third Circuit also noted disapprovingly that the district court had failed entirely to consider deterrence when arriving at such a drastically low sentence for Goff. *Id.*

Similarly, the defendant in *United States v. Lychock*, 578 F.3d 214 (3d Cir. 2009), was sentenced to five years of probation and a $10,000 fine despite his guideline range of 30 to 37 months. The government appealed the sentence arguing that it was substantively unreasonable. The Third Circuit agreed and vacated the excessively lenient sentence. *Id.* at 221. Lychock argued that his sentence should have been affirmed because of his age (37), acceptance of responsibility and lack of criminal record. The Third Circuit was not convinced reasoning that none of these factors justified such a drastic deviation from the guideline range. *Id.*

The Third Circuit has also overturned, as excessively lenient and thus substantively unreasonable, a sentence of five years of probation to begin with six months home confinement, along with a $2,500 fine, for a defendant with child sexual abuse material in *United States v. Hayes*, 383 F. App'x. 204 (3d Cir. 2010). Hayes' guideline range was 51 to 63 months. The sentencing court focused on Hayes' lack of a criminal history and supposed low risk of reoffending. His post arrest psychological treatment and family support were also significant factors in

13

the far below guideline sentence. The district court also focused on the fact that Hayes had not actually sexually assaulted a child. *Id.* at 205-06. The Third Circuit found that none of these reasons justified such an excessively lenient sentence. *Id.* at 208. As a result, the Third Circuit vacated the sentence as substantively unreasonable, and the case was remanded for resentencing. *Id.*

### F. Conclusion

Sutton received and possessed hundreds of items of child sexual abuse material. His illegal stockpile depicted young children being raped and sexually humiliated. The costs of his decision to receive and possess child sexual abuse material pale in comparison to the horrible toll suffered by the child victims whose abuse captivated Sutton. He deserves a sentence within his applicable guideline range.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney


*s/Christian A. Trabold*
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013