IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL No: 17-22 Erie |
| VS. | |
| DANIEL THOMAS SUTTON, | Electronically Filed |
| Defendant. | |

## SENTENCING MEMORANDUM

AND NOW, comes the Defendant, Daniel Thomas Sutton, by and through his attorney, Sean Logue,, Esquire, who brings the within Sentencing Memorandum, and in support thereof sets forth the following:

1. Sentencing in this matter is scheduled for December 6, 2021.

2. Defendant entered a plea of guilty to a Count One of the Indictment charging him with Receipt of Material Depicting the Sexual Exploitation of a Minor, on or about July 12, 2021, in violation of 18 U.S.C. § 2252(a)(2).

3. The advisory guidelines range is 151-188 months based on an offense gravity score of 34 and a criminal history category of I, *with a total criminal history score of 0*.

## MOTION FOR VARIANCE

4. Defendant respectfully requests that this Honorable Court grant this Motion for variance and sentence Defendant to the mandatory minimum term of incarceration of 60 months, as supported by this Sentencing Memorandum.

**PERSONAL INFORMATION AND BACKGROUND**

As stated above, Defendant has no criminal history of any kind. He has great family support which is a significant factor when evaluating his risk of recidivism, which in this case would reduce that risk. Additionally, Defendant is a single father and supports his family. Defendant, despite being under federal indictment, has remained gainfully employed. From 2017 to 2019 Defendant was employed by Ryzim Postal Service in Lewis Run, Pennsylvania as a mail runner. Currently, Defendant is at McKean Memorial in Bradford, Pennsylvania performing cemetery maintenance. Additionally, since his indictment in August of 2017, much of which has been attributable to delays caused by the global Covid-19 Pandemic, Defendant has been released on home detention and has had *no violations*.

Defendant has experienced depression throughout his life. After his arrest in this matter, he sought treatment and was formally diagnosed. He is currently attending weekly counseling sessions with James L. Owens, LPC, in Bradford Pennsylvania and has been doing so since August of 2021. Additionally, Defendant has attended sex offender therapy at Project Point of Light in Clearfield, Pennsylvania for the past year and has attended group therapy sessions weekly. Further, Defendant attended Deerfield Behavioral Health of Warren in Bradford, Pennsylvania, for psychotherapy services from 2018 to 2019. Defendant also attended Edinboro Counseling and Psychological Service, Edinboro, Pennsylvania, in 2019. (See Presentence Investigation Report).

**SENTENCING FACTORS**

5. 18 U.S.C. § 3553(a) and (b) provide the controlling factors for sentencing and are incorporated herein.

6.      Defendant submits that a sentence below the Advisory Guidelines range is appropriate in this case for the following reasons:

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Defendant acknowledges that his offense conduct was very serious. Defendant defers to the report filed under seal in this matter to explain the history and characteristics of the Defendant. Defendant was a collector of child pornography. He has no prior sexual predatory history. However, because of the applicable enhancements, he faces 151-188 months according to the advisory sentencing guidelines which is much higher than the statutory minimum of five (5) years.

### 2. The Need for the Sentence Imposed

Defendant is facing a significant period of incarceration in federal prison. The issue is how long is necessary to reflect the seriousness of the offense, to protect the public from Defendant's criminality, to offer adequate deterrence and to provide Defendant with the educational and vocational skills necessary to become a productive member of society.

In the Government's sentencing memorandum, the Government appropriately points out the nature of the offense conduct which is reflected in the stipulated enhancements for the quantity and the nature of the material in Defendant's possession. But the question remains – is, for example, 108 months' incarceration providing this first-time offender with any greater deterrence than, for example 80 months? Is Defendant's risk of re-offending lessened with each additional month or year of incarceration in federal prison?

Defendant will ask the Court to designate him to a Bureau of Prisons institution that has sexual offender treatment such as FCI Elkton. Defendant has treated with several private therapists since his indictment.

### 3. Restitution

Pursuant to the plea agreement, Defendant will make restitution in the amount of $2000.00 to the victim in the Tara series $2000.00 to the victim in the Jenny series, and $2000.00 to the victim in the Vicky series

## DISCUSSION OF SENTENCING FACTORS

7.      Paragraphs 1 – 6 are incorporated as though set forth at length herein. Pursuant to *Booker v. United States,* 125 S.Ct. 738 (2005)*,* the Sentencing Guidelines are merely advisory, and a sentencing court shall be guided by the factors set forth in 18 U.S.C. 3553(a). Section 3553(a) places on equal footing the sentencing guidelines, the nature and circumstances of the offense and history of the defendant, the need for the sentence reflecting the seriousness of the offense, the need to protect the public, adequate deterrence and effective correctional treatment for a defendant. Although these factors overlap with the grounds for potential guidelines departures, a court is not precluded from considering these factors instead of or in addition to those potential grounds for departures. *See United States v. King*, 454 F.3d 187, 194-95 (3d Cir. 2006.) Following, *United States v. Booker*, 543 U.S. 220 (2005), the District Court must impose a sentence in accordance with the factors set forth in 18 U.S.C. § 3553(a), of which the "advisory United States Sentencing Guidelines [the "guidelines"] are one factor to consider." *United States v. Cooper,* 437 F. 3d 324 (3d Cir. 2006). Post-Booker, "discretionary sentences not based on some specific guidelines departure [are] known as 'variances.'" *United States v. Vampire Nation*, 451 F. 3d 189, 195 fn. 2 (3d Cir. 2006). The district court must give meaningful consideration to all of the section 3553 sentencing factors and state on the record logical reasons for the sentence that are consistent with the factors. *Id*. at 196.

8. The calculation of the correct guideline range is only the first step in the process of post-Booker sentencing. As the Third Circuit recently set forth in *United States v. Tomko*, 498 F.3d 157 (3d Cir. 2007):

> Our post-Booker precedent instructs district courts to follow a three-step sentencing process: (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker; (2) in doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force; and (3) finally, they are required to "exercise [their] discretion by considering the relevant [3553(a)] factors," *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006), in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines. See generally *United States v. King*, 454 F.3d 187 (3d Cir. 2006).

*Tomko,* 498 F.3d at 163 n.6.

9. The Third Circuit has also rejected the presumption of reasonableness for within guidelines sentences, *United States v. Cooper*, 437 F.3d 324, 331 (3d Cir. 2006); therefore, the court may vary from the guidelines for reasons which, pre-Booker, would not have supported a departure. *See, e.g.*, *United States v. Colon*, 474 F.3d 95, 99 (3d Cir. 2007) (a district court need not rely on departure factors to sentence a defendant outside the guidelines range).

10. In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court held that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Moreover, a guidelines sentence is not a presumptive sentence, "[o]therwise, as several Courts of Appeals have concluded, we would come close to restoring the mandatory nature of the guidelines excised in Booker." *United States v. Cooper*, 437 F.3d at 331. The Court must consider each relevant §3553(a) factor and reasonably apply the factors to the circumstances of the case. Id. at 329-30. The Court need not make findings as to each factor "if the record makes clear the court took the factors into accounts at sentencing," *id*., but must address any meritorious

ground raised by the prosecution or defense. *See also United States v. Manzella*, 475 F.3d 152 (3d Cir. 2007).

11. In *Gall v. United States*, 552 U.S. 38 the Court rejected any requirement of "extraordinary circumstances" as a justification for a downward variance from the guidelines' range as "not consistent with our remedial opinion in *United States v. Booker*." Slip. Op. at 6-7, (citation omitted). The Court explained that this approach "come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guideline range." *Id*. at 8. Requiring "extraordinary circumstances" to justify a below guidelines sentence would impermissibly elevate the guidelines above the other factors articulated in 18 U.S.C. § 3553. The Court in *Gall* also emphasized the broad discretion of the district court in imposing sentence. *Id*. at 598-97. "[T]he district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party, and then . . . make an individualized assessment based on the facts presented." *Id*.

12. Ultimately, the Court's task is to determine a sentence that is sufficient, but not greater than necessary, to comply the purposes set forth in 18 U.S.C. § 3553(a).

13. As set forth above, the advisory guidelines range is 151-188 months' incarceration. The offense level pursuant to U.S.S.G. § 2G2.2 has been arrived at via stipulation but recent studies have indicated that this particular section of the guidelines is perhaps in need of revision. In February 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines for non-production offenders. *See* United States Sentencing Commission, *Report to the Congress: Federal Child Pornography Offenses* (2012) *["Child Porn Report"]*. The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider

whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *id.* at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii, 323.

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi; *id.* at 209,323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated ." *Id.* at 6.

Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *id.* at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, resulting in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

14. The evolution of the child pornography sentencing guidelines merits discussion. The Guidelines for child pornography offenses were the result of congressional interference and direction, and were not the result of the United States Sentencing Commission's careful review of empirical data and national experience. Among the exhaustive source material cited was a study of the evolution of the child pornography Guidelines "Deconstructing the Myth of Careful Study:

A Primer on the Flawed Progression of the Child Pornography Guidelines", by Troy Stabenow (attached hereto).

The Sentencing Commission's 2009 Report traces the history of the Congress's role in the escalation of the recommended penalties for child pornography offenses, noting that there were 9 substantive amendments, generally Congressionally-mandated, from 1987-2009. This resulted in a typical child pornography offender facing a higher Guidelines recommended sentence than the "typical offender convicted of conspiracy to commit murder and kidnapping". *Id.* at 605.

Given the ever-increasing sentences suggested by the Guidelines, the Commission reported that below-guideline variances far exceeded the norm for other offenses. It reported non-Government sponsored variances of 35.7% in 2008 and 43.03% in 2009, compared to rates of 13.4% for all offenses in 2008 and 15.9% in 2009. *Id.* at 606. This dovetails with its survey of judicial opinion of the child pornography Guidelines, finding that 69% found the ranges for receipt too high and 30% found the ranges for distribution too high. *Id.*

The Sentencing Commission's 2012 report on child pornography Guidelines, expanding upon the 2009 report, found that in 2010 54.1% of offenders sentenced for receipt, transportation and distribution offenses (as opposed to possession offenses) received below guideline range sentences. United States Sentencing Commission Report to the Congress: Federal Child Pornography Offenses, December 2012, (hereinafter "USSC Report, 2012"), Chapter 6, Table 6-5; see http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses.

The Third Circuit cited with approval the opinion of the Second Circuit in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), *reh'g denied* (2d Cir. 2010). The *Dorvee* Court wrote that the enhancements to the Guidelines, the result of Congressionally- directed amendments, resulted

in §2G2.2 being "fundamentally different from other Guidelines", and "cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases" 616 F.3d 174 at 184.  (Defendant's guidelines herein exceed the statutory maximum at the high end by one month.)  The *Dorvee* Court noted that the enhancements suggested by §2G2.2, which also are applicable to Mr. Sutton, apply in almost all cases. Reviewing the statistics for 2009 sentences, it found that 94.8% involved images of prepubescent minors, 97.2% involved use of a computer, 73.4% involved violent images and conduct and 63.1% involved more than 600 images. Overall, 96.6% of all offenders received quantity of image enhancements in 2009. *Grober* at 607.

15.     The 2012 United States Sentencing Commission Report provides additional reasons to question the reasonableness of the Guidelines and the sentencing enhancements.  The Commission's 2012 report engaged in extensive analysis of sentencing trends in child pornography cases, and demonstrates that the enhancements in §2G2.2 are so routinely applied that they have rendered the base offense level calculations meaningless. In this case, the Defendant was investigated by law enforcement utilizing a peer to peer file sharing network, BitTorrent, which identified files being shared on a computer which had an IP address issued for Defendant's residence. The Government's evidence identified file sharing through that computer which Defendant admitted he used to download child pornography.  The Government's detection of the child-pornography sharing and its subsequent investigation and seizure is typical of over 90% of the cases studied by the Commission in its 2012 report. 2012 USSC Report, p. 145. The report describes the "typical" case as involving peer-to-peer discovery of distribution (as one of 3 methods of distribution), issuance of a search warrant after obtaining information concerning the

IP address, search and seizure of the computer, discovery of commonly used search terms for child pornography, and an admission by the alleged perpetrator.

The Commission reports that, of the 794 cases from 2010 in which peer-to-peer sharing was the method of distribution (as was the case here), 72.4% used a program such as BitTorrent, did not distribute in any other manner and engaged in no personal contact with those who received the materials (as was the case here). 2012 USSC Report, p. 150. The instant case also reflects what the Commission found was the majority of cases in which a defendant was convicted of distribution; sharing of materials through impersonal peer-to-peer share filing, as opposed to personal contact (53.4% of all distribution cases). *Id.* at p. 166. That this case is a typical, as opposed to an unusual, child pornography distribution case, is reflected by the Commission's conclusion that impersonal peer-to- peer sharing is the sole method of receipt of child pornography by 74.5% of recipients, and is the sole method of distribution by 85.3% of offenders. *Id.*

The Commission reported that average sentences nearly doubled in the period between 2004 and 2010. By 2010, sentences for receipt, transportation and distribution offenses had risen from an average of 71 months in 2004 to an average of 129 months. *Id.* at p. 164. In analyzing this data, the Commission reported 2010 statistics for application of enhancements which is largely consistent with the data reported in the *Dorvee* and *Grober* opinions (citing the 2009 Commission report). 2012 USSC Report, p. 316. The Commission concluded that "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders." *Id.* The Commission's report concluded by identifying three factors that should be considered in imposing sentence: an offender's "collecting" behavior; whether the offender was engaged in a "community" of other offenders (e.g. through internet chat rooms); and an offender's prior history of engaging in sexually

predatory activity. *Id.* p.320. It concluded that, in light of the fact that most offenders are subject to enhancements for over 600 images, the Guidelines failed to properly distinguish between large-scale collectors and other offenders. *Id.* p. 321. The Report described the 11 point enhancements related to an individual's collecting habits as overly harsh in many instances and as not reflecting the actual content of the collection and the habits of the collector accurately. It therefore recommended amending the Guidelines to allow the Guidelines to properly distinguish between offenders, and to avoid the blanket, potentially overly harsh application of the enhancements to all offenders.

In summary, the Guidelines range of sentences, which by the above analysis of both courts and the Sentencing Commission, are excessive as they treat virtually all offenders as severe offenders. The routine application of enhancements to all offenders renders the Guidelines under 2G2.2 virtually meaningless, as it results in the routine imposition of sentences at virtually the maximum range of statutory sentences. While a substantial term of incarceration is anticipated, the Guidelines should be rejected as not properly reflecting the various factors which the Court must consider under 18 U.S.C. §3553, and in particular resulting in sentences which far exceed the requirement that a sentence be sufficient, but not greater than necessary, to comply with the purposes of §3553.

16. Turning to the instant matter, Defendant believes and, therefore, avers that the sentencing factors set forth in §3553 support the Defendant's request for a below Guidelines sentence.

## **CONCLUSION**

Mr. Sutton understand the seriousness of his actions and has accepted responsibility for his conduct. Since being charged in this case in 2017, Mr. Sutton has abided by all conditions of his bond and voluntarily participated in numerous mental health treatment programs and sex offender programs as more fully described above. Given these circumstances, Mr. Sutton respectfully requests that his sentence be sixty (60) months of incarceration, to be followed by five years of supervised release.

Respectfully Submitted,

/s/ Sean T. Logue, Esquire

Sean T. Logue, Esquire

PA ID# 208221
27 W. Main Street
Carnegie, PA 15106
412.389.0805
412.253.6520 (facsimile)
sean@seanloguelaw.com