## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:17cr22 |
| | ) | **Electronic Filing** |
| DANIEL THOMAS SUTTON | ) | |

### OPINION

Presently before the court is defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  For the reasons set forth below, the motion will be denied.

On August 8, 2017, a Grand Jury sitting in the Western District of Pennsylvania returned a two count indictment charging Daniel Thomas Sutton ("Sutton" or "defendant") with: (1) receiving material depicting the sexual exploitation of a minor, from in or around January 2017 to in or around July 2017, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1); and (2) possession of material depicting the sexual exploitation of a minor, from in or around January 2017 to in or around July 2017, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2).

After being released on bond, defendant sought and obtained sixteen extensions of time to file pretrial motions.  During this time defendant attended sex offender therapy at project Point of Light in Clearfield, Pennsylvania, with appointments on a weekly basis.  He also attended Deerfield Behavioral Health of Warren in Bradford, Pennsylvania, for psychotherapy services from 2018 to 2019 and Edinboro Counseling and Psychological Services, in Edinboro, Pennsylvania, for similar services in 2019.  After approximately 46 months of preparation, defendant entered a change of plea to count one on July 13, 2021.[1]  In August of 2021, defendant

---

[1] Defendant was represented by three different attorneys during this time.

began treatment with James L. Owens, LPC, in Bradford, and continued to attend sex offender therapy at the Point of Light in Clearfield.  See Defendant's Sentencing Memorandum (Doc. 156) at p. 2.  Defendant had no prior criminal history, placing him in criminal history category I.  His offense conduct did encompass the possession of 218 videos depicting minors being sexually abused, with some as young as infants and toddlers.  Some of the material depicted the sexual penetration of young children in a manner that obviously inflicted pain.  Defendant admitted he purposefully searched for "the worst stuff and would seek out videos with sound."  PSIR (Doc. No. 144) at ¶ 16.

Defendant received guideline adjustments for having material depicting victims under the age of 12, knowingly engaging in distribution, having material that portrayed sadistic or masochistic conduct or other depictions of violence and the sexual abuse of an infant or toddler, using a computer, and possessing extensive images.  His adjusted base offense level was 34.  When combined with a criminal history category of I, that offense level produced a guidelines sentencing range of 151 to 188 months.  Id. at ¶¶ 34, 68.

Defendant filed a sentencing memorandum that highlighted among other things his lack of any prior criminal conduct, his post-plea sex offender treatment and counseling with a number of personal phycologists/therapists.  At sentencing, defense counsel highlighted that defendant had been receiving counseling from psychologists and a licensed clinical social worker.  Counsel posited that defendant had done everything he could to address his "mental health problem" and had done so not only to get better, but to avoid trouble in the future.  Counsel further presented the oral statements of family members who had been involved in helping defendant keep his therapy and counseling sessions, often at significant effort and sacrifice.  Counsel requested the court to vary downward to the statutorily mandated minimum sentence of 60 months.

The court varied downward and imposed a sentence of 72 months.  Among other factors, the court highlighted defendant's lack of a criminal record, a lifetime of gainful employment, his exemplary conduct on pretrial release, his extensive counseling aimed at rehabilitation and his significant family support.

In his current motion, defense counsel identified the following ground for relief:

Plea counsel was constitutionally ineffective for failing to consult with, have Mr. Sutton evaluated by and thereafter present the evaluation of a mental health Professional (psychologist/psychiatrist) in support of his request for a downward Variance from a guideline sentence to the mandatory minimum sentence.  Mr. Sutton and his family made numerous requests for the same and Mr. Sutton's family was ready, willing and able to put forward money necessary to retain the services of such an expert witness. The testimony of such an expert would have put Mr. Sutton's mental health struggles into context for the court and served to mitigate the seriousness of his criminal activity.  Such evidence would have been relevant and useful to the court when exercising its discretion and imposing sentence in this case.

Amended Motion to Vacate (Doc. No. 173-1) at ¶ 12(a).  It is apparent to the court that defense counsel filed the instant motion and took this position without ever having met with defendant himself or having discussed this position with him.  See Orders of March 19, 2025, and March 20, 2025, denying defense counsel's motion for legal visit at FCI Fort Dix and first motion to compel mental health examination.  In this regard, the filings of record suggest that the instant motion was filed at the behest of defendant's family members and reflected their assessment about how the case should have been developed and presented, rather than defendant's assessment about such matters after private consultation with counsel.  Nevertheless, the court will consider the motion as presented.

The government maintains that that defendant's motion should be summarily denied for two reasons.  First, defendant's assertions are conclusory at best and he has failed to provide any documentation or support for his claim.  Second, defendant has not met the requirements to prevail on an ineffective assistance of counsel claim.

A § 2255 motion may be disposed of summarily where the motion fails to set forth a basis upon which relief can be granted or where the factual allegations advanced in support of the motion are vague, conclusory or patently frivolous.  See Rule No. 4 of the Rules Governing § 2255 Proceedings; Blackledge v. Allison, 431 U.S. 63 (1977); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972) (where the record affirmatively indicates that a claim for relief is without merit, it may be decided summarily without a hearing).  In Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), the United States Court of Appeals for the Third Circuit stated:

> A Section 2255 motion is addressed to the discretion of the trial judge
> in the first instance and where the record affirmatively indicates the
> claim for relief is without merit, the refusal to hold a hearing will not
> be deemed an abuse of discretion.

Id.; accord United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).  Other courts have reached the same conclusion.  See Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (proper for district court to dismiss portion of § 2255 petition without evidentiary hearing where allegations conclusively failed to state a claim for relief); United States v. Oliver, 865 F.2d 600, 604 (4th Cir.), cert. denied, 493 U.S. 830 (1989) (district court may dismiss § 2255 petition pursuant to Rule 4(b) where record conclusively demonstrates that movant is not entitled to relief as a matter of law); Mathews v. United States, 11 F.3d 583, 584-86 (6th Cir. 1993) (where § 2255 petition raises no factual disputes and bases for relief are without merit, district court need not hold an evidentiary hearing and may dismiss the motion summarily).

It is well settled that the first question to be resolved in assessing a § 2255 motion is whether the movant has alleged "an error sufficiently fundamental to come within the narrow limits of § 2255 [thus] making the conviction vulnerable to attack."  United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir. 1992) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)).

"Habeas corpus has long been available to attack convictions and sentences entered . . . without jurisdiction [and more recently has been] expanded to encompass claims of constitutional error as well." United States v. Addonizio, 422 U.S. 178, 185 (1979).

Where review of a conviction or sentence is sought based only on an error of law, "the scope of collateral attack has remained far more limited." Stone v. Powell, 428 U.S. 465, 477 & n.10 (1976); see also Reed v. Farley, 512 U.S. 339, 354 (1994) (citing Davis v. United States, 417 U.S. 333, 346 (1974) and Hill v. United States, 368 U.S. 424, 428 (1962)). In such circumstances "habeas review is available to check violations of federal laws when the error qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" Reed, 512 U.S. at 348 (quoting Hill, 368 U.S. at 428); United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996) ("nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process").

In contrast to fundamental errors, non-fundamental errors which are not raised on direct appeal where there was an opportunity to do so are waived. Essig, 10 F.3d at 976-77 & n.25; Grant v. United States, 72 F.3d 503, 505-06 (6th Cir.), cert. denied, 517 U.S. 1200 (1996) (claims which do not amount to serous defects meriting relief outside the normal appellate process are waived). For example, in United States v. Folk, 954 F.3d 597 (3d Cir. 2020), the court followed the general consensus of the other courts of appeals and held that an incorrect career-offender designation under the advisory guidelines is not cognizable under § 2255 because it is neither a procedural error that qualifies as "an omission inconsistent with the

rudimentary demands of fair procedure" nor "a fundamental defect that inherently results in a complete miscarriage of justice." Id. at 604.

In addition to presenting a claim falling within these limited substantive areas, significant procedural restrictions have been imposed in conjunction with claims for collateral relief that were not raised on direct appeal. Bousley v. United States, 523 U.S. 614, 621-22 (1998). As to alleged errors which are "based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167-68 (1982).

It is undisputed that defendant did not appeal his conviction or sentence. He has not advanced any grounds for excusing his failure to do so. Thus, all claims that could have been raised on direct appeal are defaulted. See Murray v. Carrier, 477 U.S. 478, 491 (1986) (failure to raise a claim on direct appeal procedurally defaults the review of that claim).

Moreover, defendant's assertion that his trial counsel was ineffective for failing to employ different or other experts in formulating a strategy for sentencing is meritless. A two-part test is utilized to assess an ineffective counsel claim. See Strickland v. Washington, 466 U.S. 668 (1984). The first prong requires the petitioner to demonstrate that counsel's performance was deficient. This requirement is met where "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Flamer v. State of Delaware, 68 F.3d 710, 728 (3d Cir. 1995) (quoting Strickland, 466 U.S. at 687)). This prong requires proof that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, which existed at the time. Id. The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly

deferential.  Id.  (citing Strickland, 466 U.S. at 689); see also Government of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).  The assessment of counsel's performance must be made in light of all the circumstances and the ultimate objective of assuring vigorous advocacy of the petitioner's defense.  Id.  It also must be made without the "distorting effects of hindsight" and the petitioner has the burden of overcoming the strong presumption that counsel was effective.  United States v. Kissick, 69 F.3d 1048, 1054 (10th Cir. 1995).

The second prong of the Strickland analysis requires a showing that counsel's ineffectiveness was prejudicial.  Flamer, 68 F.3d at 728.  This prong requires a petitioner to demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the prosecution would have been different.  In this context "[a] reasonable probability is one which is 'sufficient to undermine confidence in the outcome.'"  Id. (quoting Strickland, 466 U.S. at 694).  The assessment cannot be based upon generalities, but instead must be based upon a demonstration of how the "specific errors of counsel undermined the reliability of the [outcome]."  Flamer, 68 F. 3d at 729 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)).  Where the alleged error is based upon a failure to make a reasonable investigation or the election to pursue one defense over another, a heavy measure of deference must be accorded to counsel's judgment.  As long as there was a reasonable basis for counsel's strategic decision, counsel may not be found to be ineffective.  See Weatherwax, 77 F.3d at 1432.

As an initial matter, defendant has failed to even show that defense counsel's performance in presenting the course of post-plea treatment and acceptance of responsibility fell below the objective standard of reasonableness guaranteed by the Sixth Amendment.  His claim is that had counsel utilized an expert psychologist or psychiatrist and presented a formal report from such an expert, this member of the court would have gone further than the 79 month variance it awarded defendant and imposed a sentence at the statutory 60 month

minimum, which would have been a 91 month variance.  Such speculation does not even come close to demonstrating that sentencing counsel made errors so serious that they fell below an objective standard of reasonableness under the prevailing professional norms.

Second, defendant has failed to show he was prejudiced by counsel's sentencing strategy and performance.  The utilized strategy and performance netted defendant a reduction from 151 months at the low end of the guidelines to a sentence of 72 months.  The 72 month sentence was just 12 months above the statutorily mandated minimum sentence of 60 months.  Any effort to show that this court would have imposed a sentence between 60 and 72 months is predicated on an asserted error that virtually is non-existent.  And any such error would be insignificant in any event.  Consequently, defendant has failed to show that the outcome of his sentencing hearing would have been different.

Defendant has failed to show that counsel's performance in formulating and presenting a sentencing strategy fell below the objective standard of performance guaranteed by the Sixth Amendment.  He also has failed to show that the newly proposed sentencing strategy would have produced a different result in his case.  In other words, defendant has failed to show he was prejudice by counsel's challenged performance.  Under these circumstances, defendant's claim for ineffective assistance of counsel is subject to summary dismissal.

For the reasons set forth above, defendant's motion to vacate, set aside or correct sentence will be denied.  An appropriate order will follow.

Date: March 19, 2026

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Christian A. Trabold, AUSA
        Jason David Javie, Esquire

        (*Via CM/ECF Electronic Mail*)

8